# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION

## CIVIL CASE NO. 1:05CV91

| | |
|---|---|
| JOYCE RIGGS, *et. al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | **O R D E R** |
| ) | |
| DAYCO PRODUCTS, LLC, *et. al.*, ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on the Plaintiffs' motion for class certification. During the pre-trial conference with counsel for the parties, counsel were advised that the class would be certified. The purpose of this decision is to delineate the reasons for granting that motion.

## PROCEDURAL HISTORY

On April 25, 2005, the individually named Plaintiffs (Plaintiffs) filed this action, on behalf of retirees, to enforce the terms of the 1995 Group Benefits Agreement entered into between Dayco Products, L.L.C. (Dayco)

1

and the union of which the Plaintiffs were members, Local No. 277, United Rubber, Cork, Linoleum and Plastic Workers of America (Local 277). The action was brought pursuant to the Employee Retirement Income Security Act of 1974 (ERISA) and the Labor Management Relations Act (LMRA). The Plaintiffs moved to certify this as a class action, a motion which the Defendants oppose.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 23 prescribes a two-part test for determining whether an action should be certified as a class action. First, the plaintiffs must show four prerequisites: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims ... of the representative parties are typical of the claims ... of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." **Fed.R.Civ.P. 23(a).**

> [T]he final three requirements of Rule 23(a) "tend to merge," with commonality and typicality "serv[ing] as guideposts for determining whether ... maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."

**Broussard v. Meineke Discout Muffler Shops, Inc., 155 F.3d 331, 337 n.3 (4th Cir. 1998).** If each of these prerequisites is met, then the putative class must show that it fits into one of three categories specified in Rule 23(b). Unless each prerequisite is met, a determination under Rule 23(b) is unnecessary. **Id.**

In ruling on a motion for class certification, the district court must accept the allegations of the complaint as true. **In re Kirschner Medical Corporation Securities Ligitation, 139 F.R.D. 74, 81 (D.Md. 1991).** Nonetheless, the burden of establishing the right to certification remains with the proponents thereof. **Stastny v. Southern Bell Tel. & Tel. Co., 628 F.2d 267 (4th Cir. 1980).**

The Court will first determine whether the prerequisites of Rule 23(a) have been met. If so, the provisions of Rule 23(b) will then be applied.

## ALLEGATIONS OF THE COMPLAINT

As noted above, the Plaintiffs seek to enforce the terms of their Group Benefits Agreement pursuant to Section 502(a)(1) & (3) of ERISA, 29 U.S.C. §1132(a)(1) & (3) and Section 301 of the LMRA, 29 U.S.C.

§185."[1]  **Complaint, filed April 25, 2005, at 2.**  At issue is the provision of health insurance benefits for retired employees of Dayco who were members of Local 277 at Dayco's Waynesville, North Carolina plant.  That plant closed all operations in 1998.  **Id., at ¶9.**

Local 277 negotiated with Dayco management for benefits to cover its members beginning in 1964 and continuing until May 1, 1995.  **Id., at ¶¶10-12.**  On May 1, 1995, Local 277 and Dayco entered into the Group Benefits Agreement.  **Id., at ¶11.**  Employees who retired from Dayco after this agreement became effective were entitled to receive the benefits set forth in that Agreement.  **Id., at ¶12.**  Moreover, these benefits were vested and could not be reduced after retirement.  **Id., at ¶13.**  The same benefits were promised for life to the surviving spouse of a Dayco retiree.  **Id.**

The 1995 Agreement contained the following provision:

> Provided that the cost of coverage under the Plan does not exceed $3,500 for pre-Medicare retirees or $1,900 for Medicare-eligible retirees, there will be no cost to you for coverage under the Medical Plan as a retiree.

---

[1] Dayco Products, LLC is the successor corporation to Dayco Products, Inc. by virtue of a corporation reorganization which occurred in July 2001.  **Complaint, supra., at ¶6.**  The plant at issue was operated by Dayco Products, Inc. and is referenced herein as "Dayco."  Dayco Products, LLC is a wholly owned subsidiary of Mark IV Industries, Inc. (Mark IV).  **Id., at ¶7.**

4

**Id., at ¶15.** This provision contained the "cost cap" beyond which Dayco was not obligated to pay toward the insurance premium. **Id.** The provision contained no explanation for the manner in which it was to be applied to retirees who had dependents. **Id.**

In addition to the "cost cap" provision of the Agreement, Dayco retained the authority to chose the provider of the benefits. **Id., at ¶16.** Dayco contracted with United Healthcare (UHC) for the coverage at issue. **Id.** Since the beginning of the relationship with UHC, Mark IV[2], acting as the administrator of the Plan, chose a ratio of 3.5 for family coverage. **Id., at ¶17.** In other words, Dayco paid up to 3.5 times the cost cap for an individual toward the family coverage.

Dayco closed the Waynesville plant in 1998; however, at that time, it entered into a collectively bargained Effects Bargaining Agreement with Local 277. **Id., at ¶14.** Although that agreement actually terminated all existing agreements between the parties, it preserved the rights of retirees to medical insurance. **Id.** Shortly after the plant closing in March 1998, almost the entire group of covered families consisted of a retiree and his or

---

[2]Mark IV is the plan administrator for the Plan. **Complaint, supra., at ¶7-8.**

her spouse. **Id., at ¶18.**

Until November 2001, Mark IV paid the premiums for family coverage which were 3.5 times the premiums for single coverage. **Id., at ¶18-19.** Beginning in November 2001, Mark IV advised its retirees that it would pay up to $3,500 for pre-Medicare single coverage and 3.5 times that amount, or $12, 250, for pre-Medicare family coverage. **Id.** Likewise, Mark IV advised its retirees that it would pay up to $1,900 for Medicare-eligible single coverage and up to $6,650 for Medicare-eligible family coverage. **Id.**

Although Mark IV initially attempted to collect these premiums, it entered into a "status quo" agreement with Plaintiffs' counsel pursuant to which the premiums were not collected for the period from January 1, 2002 through September 30, 2003. **Id., at¶21.** During that time, Mark IV periodically sent letters to the retirees advising of the amount of premiums they would owe at the end of the "moratorium." On each of those occasions, Mark IV calculated the premiums using the 3.5 multiplier for family coverage. **Id.**

Beginning in October 2003, Mark IV began to require retirees to pay premiums over and above the caps; *i.e.*, Mark IV calculated premiums by

continuing to use the 3.5 multiplier.  **Id., at ¶22.**  In April 2005, Mark IV announced to the retirees that it would stop the payment of 3.5 times the cap toward family coverage.  **Id., at ¶25.**  Therefore, if a retiree elected to provide coverage for his or her spouse, the retiree was obligated to pay 3.5 times the cost of individual coverage for family coverage.  **Id.**

Some retirees elected to forego the UHC insurance coverage and enrolled in the self-insured Silver Care program.  **Id., at ¶27.**  In April 2005, Mark IV announced to those retirees that it would no longer pay up to the cap for that insurance.  **Id.**  Despite this treatment of the retirees for the Dayco Waynesville plant, Mark IV does pay up to a per person cap for retirees in the Silver Care program in all other parts of the United States.  **Id.**

The Plaintiffs claim that Mark IV has failed to negotiate with UHC for a premium cost for retiree families which consist only of the retiree and spouse.  **Id., at ¶32.**  Instead, they claim that Mark IV has simply accepted the premiums demanded by UHC without attempting to reduce the same.  **Id.**

By virtue of these actions, Plaintiffs have alleged violations of LMRA and ERISA.

**DISCUSSION**

Plaintiffs have described the class as all persons: (a) who retired from the Local 277 bargaining unit on or after May 1, 1995, having met the eligibility requirements for retiree medical insurance; (b) who declined any available option to be treated as a "pre-Addendum" retiree and instead chose to receive coverage under the plan of retiree medical insurance benefits promised in the 1995 Benefits Agreement; and (c) who have one or more dependents eligible for coverage pursuant to the terms of the 1995 Benefits Agreement.  **Complaint, supra., at ¶35.**  Each of the named representatives falls within this definition.  **Id., at ¶36.**

**Numerosity.**

The first prerequisite of Rule 23(a) is that "the class is so numerous that joinder of all members is impracticable." The proposed class here consists of approximately 250 members.  The Defendants do not dispute that this prerequisite has been met.  The Court finds that the numerosity requirement has been met.  **See, *e.g.*, Bittinger v. Tecumseh Products Company, 123 F.3d 877, 884 n.1 (6th Cir. 1997) ("Rule 23(a) requires the court to find that 'the class is so numerous that joinder of all**

**members is impracticable.'"); Diehl v. Twin Disc, Inc., 102 F.3d 301 (7th Cir. 1996); Gable v. Sweetheart Cup Co., Inc., 35 F.3d 851, 854 (4th Cir. 1994) ("In January 1990, several Maryland Cup retirees filed suit against Sweetheart Cup ... claiming that their benefits had vested at the time of their retirement and that the 1989 benefit reduction amendment therefore violated ERISA. The district court certified a class of plaintiffs including all of defendants' retired employees (and their beneficiaries) who retired before October 1, 1985 and were participants in the plan as of June 1, 1989.").** Moreover, the size of individual claims and the inconvenience of trying individual suits warrants a finding in favor of the Plaintiffs' having met the numerosity requirement. **See,** *e.g.* **Bradford v. Agco Corp., 187 F.R.D. 600, 603 (W.D.Mo. 1999), citing Paxton v. Union Nat'l Bank, 688 F.2d 552, 559 (8th Cir. 1982).**

**Commonality.**

The next requirement pursuant to Rule 23(a) is that questions of law and/or fact be common to the class. "The [] commonality requirement[] of the Federal Rules ensure that only those plaintiffs [] who can advance the same factual and legal arguments may be grouped together as a class."

**Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 340 (4th Cir. 1998).** The Defendants claim the following distinctions preclude any finding of commonality: (1) the contract between the parties did not require Dayco to pay up to 3.5 times the cost of individual coverage toward family coverage; thus, proof outside of the contract will vary depending on the group to which an individual retiree belongs; (2) Mark IV's custom of dealing with the multiplier differs from its method of dealing with Silver Care; (3) the impact of the change in cap multiplier will vary widely depending on whether the retiree was Medicare eligible or not, has family or individual coverage, or elected Silver Care coverage; (4) some retirees have dropped coverage altogether; (5) as to the claim of failure to negotiate, that claim does not apply to Silver Care retirees; and (6) attempts to negotiate vary depending on the group.

The undersigned does not find the lack of commonality argued for by the Defendants. "Not every factual or legal question must be common so long as a single issue is common to all class members." **Diehl v. Twin Disc, Inc., 1995 WL 330637 **3 (N.D.Ill. 1995), citing Retired Chicago Police Ass'n, 141 F.R.D. 477, 485 (N.D.Ill. 1992).** Here, the issues are the custom of the Defendants in paying the multiplier and the alleged

failure to negotiate. The fact that some members dropped UHC coverage and elected no coverage or Silver Care coverage goes to the issue of damages, not commonality. **Forbush v. J.C. Penney Co., 994 F.2d 1101, 1106 (5th Cir. 1993); Doe v. Guardian Life Ins. Co., 145 F.R.D. 466, 473 (N.D.Ill. 1992).**

> Most important is the fact that each class member's claim arises from the same act by defendant[s]; the claimed reduction or modification of the health insurance benefits. The issues of whether defendant[s] made binding promises regarding the levels of health insurance benefits and whether defendants['] action of modifying those benefits is a breach of its fiduciary duties under ERISA poses questions of law and fact common to all class members.

**Diehl, supra.**

"What we are looking for is a common issue the resolution of which will advance the litigation." **Sprague v. General Motors Corp., 133 F.3d at 397.** This common question is all that is required under the Rule." **Bittinger, 123 F.3d at 884.**

**Typicality.**

The third prerequisite of Rule 23(a) is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "Typicality under Rule 23(a)(3) means that there are 'other

members of the class who have the same or similar grievances as the plaintiff.'" **DeBoer v. Mellon Mortg. Co., 64 F.3d 1171, 1174 (8ᵗʰ Cir. 1995).**

> "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct. ... A necessary consequence of the typicality requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members."

**Sprague, 133 F.3d at 399, quoting 1 Herbert B. Newberg and Alba Conte, 1 Newberg on Class Actions, §3-13, at 3-75, 76 (3d ed.1992).**

Defendants argue that the representatives "are pursuing claims that differ not only as compared to the claims of other class member, but also as compared to the claims of other named Plaintiffs." **Defendants' Response, at 17.** There are three named class representatives: Joyce Riggs, Roderick Rogers and James Carver. Riggs and Rogers discontinued their insurance coverage in January 2005 due to inability to pay the premiums. Carver is still insured. Defendants claim that because some members of the class have Silver Care coverage, these representatives are not typical. And, they claim that Riggs and Rogers cannot adequately represent class members who are still covered because

12

they dropped their coverage, an argument which obviously overlooks Carver's insured status. The Defendants' are attempting to create "atypicalities" which do not exist. However, "[m]ore importantly, [Riggs, Rogers and Carver]-like each class member-contend[] that [Dayco] originally planned to provide lifetime, [] funded benefits to retirees, as a general matter. That the evidence varies from plaintiff to plaintiff would not affect this basic claim[.] **Bittinger, 123 F.3d at 884.** "It may be that the best remedy to both the purportedly atypical claims and defenses would be to create sub-classes." **Bittinger, 123 F.3d at 884.** That is precisely what these representatives have done.

"Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." **Bradford v. Agco Corp., 187 F.R.D. 600, 603 (W.D.Mo. 1999).** "A named plaintiff's claim is typical if it arises from the same event or practice that gives rise to the claims of the other class members and is also based on the same legal theory." **Diehl, supra., at \*\*4.** Such is the case here. **See,** *e.g.***, Bittinger, supra.; Diehl, supra.; Stearns v. NCR Corporation, 297 F.3d 706 (8th Cir. 2002); Scardelletti v. DeBarr, 265**

F.3d 195 (4th Cir. 2002), reversed on other grounds,; Canseco v. Construction Laborers Pension Trust for Southern California, 93 F.3d 600 (9th Cir. 1996); Webb v. GAF Corporation, 78 F.3d 53 (2nd Cir. 1996); In re Unisys Corporation Retiree Medical Benefits ERISA Litigation, 57 F.3d 1255 (3rd Cir. 1995); Groover v. Michelin North America, Inc., (M.D.Ala. 1999); Kohl v. Association of Trial Lawyers of America, 183 F.R.D. 475 (D.Md. 1998).

**Adequacy of Representation:**

The final hurdle under Rule 23(a) is that the "representative parties will fairly and adequately protect the interests of the class." "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." **Amchem Products, Inc. v. Windsor, 521 U.S. 591, 625 (1997).** Defendants raise four arguments against the class representatives: (1) their individual interests are antagonistic to class members because this action essentially seeks to re-negotiate the contract between the parties, a fact which would increase insurance costs for other retirees; (2) as a result, they are not in a position to vigorously prosecute the case; (3) class counsel has a conflict of

interest; and (4) the labor union is in reality in control of the litigation.

Defendants argue that the Plaintiffs' cause of action seeks to reduce the amount of the family coverage premium, a reduction which would result in an increase in the cost of single coverage. While the Plaintiffs have acknowledged that is a "possibility," it remains only that. The ultimate outcome of the case depends on a variety of factors; however, the fact that any of those possibilities could occur does not render these class representatives antagonist to the class as a whole.

The Defendants also conclude that Carver has interests antagonistic to the class because as a member of the negotiating team, his service may come under fire. However, the parties have represented, at least at this point, that the ratio between the premiums charged by UHC for family versus single coverage was simply not part of the negotiations. Thus, Carver's personal role is not at issue. The Court finds the Defendants' arguments of antagonism exaggerated.

Defendants next attack the ability of Plaintiffs' retained counsel to represent the class, claiming there is a conflict of interest between the members of the class in the companion case of *Trull v. Dayco* and the members of this class. The Court has reviewed the parties' contentions

15

and finds that no such conflict exists.  The Defendants' objections amount to mere speculation and hypothetical issues of conflict which are not sufficient to deny certification.  **Becher v. Long Island Lighting Co., 164 F.R.D. 144, 152-53 (E.D.N.Y. 1996).**

Defendants also claim that there is a possibility of an action against the Union itself for breaching their duty of fair representation.  However, any such action is long since time-barred.  **Meekins v. United Transportation Union, 946 F.2d 1054 (4th Cir. 1991) (Noting the six months statute of limitations imposed on actions by an employee against the union pursuant to 29 U.S.C. §160(b) and DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 169 (1983).**

This case is not factually or legally distinct from the normal litigation brought by employees against employers for breaches of ERISA and/or LMRA.  And, based on the experience of Plaintiffs' counsel, they are entirely competent to prosecute this action.  The Court has reviewed the Defendants' other contentions, such as the argument that the Union is controlling the suit, but finds them without merit.

**Rule 23(b):**

Having concluded that each of the prerequisites of Rule 23(a) have been met, the provisions of Rule 23(b) must be addressed. Plaintiffs seek certification pursuant to Rule 23(b)(2) which provides in pertinent part:

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> ...
> The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole[.]

**Fed.R.Civ.P. 23(b)(2).**

Defendants' sole objection to certification pursuant to this clause is that there is no uniformity of grounds which will make declaratory and injunctive relief appropriate for the class as a whole. "Thus, any relief with respect to the renegotiation of premiums would necessarily vary as among class members." **Defendants' Response, at 18.**

The Advisory Committee Notes provide that

> [t]his subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate. Declaratory relief "corresponds" to injunctive relief when as a practical matter it affords injunctive relief or serves as a basis for later injunctive relief. ... Subdivision (b)(2) is not limited to civil rights cases.

5 Moore's Federal Practice 3D, §23App.04[2].

Here, the final relief sought is a declaration as to in what manner, if any, the Defendants may deviate from the custom and practice as well as the agreement and injunctive relief to prevent deviation in the future. **McGlothlin v. Connors, 142 F.R.D. 626, 640 (W.D.Va. 1992) (Certification pursuant to Rule 23(b)(2) was appropriate where plaintiffs sought declaratory judgment against defendant to increase employer contributions to trust fund.); Molski v. Gleich, 318 F.3d 937, 947 (9th Cir. 2003) (Recognizing that Rule 23(b)(2) certification may be appropriate where monetary relief is incidental to equitable relief.); accord, Eubanks v. Billington, 110 F.3d 87, 92 (D.C. Cir. 1997); Bower v. Bunker Hill Co., 114 F.R.D. 587, 596 (E.D.Wash. 1986) (Certification pursuant Rule 23(b)(2) proper where plaintiffs sought declaratory relief against defendant regarding medical benefits of retirement plan.); Probe v. State Teachers' Retirement System, 780 F.2d 776, 778-782 (9th Cir. 1986) (Certification pursuant to Rule 23(b)(2) was proper where class sought an injunction for improper calculation of retirement benefits since monetary relief from recalculation was incidental to the injunctive relief.).**

Indeed, the Defendants do not seriously argue that Rule 23(b)(2) is inapplicable to this case. The Court therefore finds that class certification is appropriate and that notice to the class members would be appropriate because of the incidental monetary relief sought. Class counsel will be provided an opportunity to advise the Court of the most efficient manner of providing notice.

**ORDER**

**IT IS, THEREFORE, ORDERED** that the Plaintiffs' motion for class certification is hereby **GRANTED** and the following Class is hereby certified:

> all persons: (a) who retired from the Local 277 bargaining unit on or after May 1, 1995, having met the eligibility requirements for retiree medical insurance; (b) who declined any available option to be treated as a "pre-Addendum" retiree and instead chose to receive coverage under the plan of retiree medical insurance benefits promised in the 1995 Benefits Agreement; and (c) who have one or more dependents eligible for coverage pursuant to the terms of the 1995 Benefits Agreement.

The representatives of the class are Joyce Riggs, Roderick Rogers and James Carver.

**IT IS FURTHER ORDERED** that the class claims and issues are as set forth in the complaint and the law firm of Bredhoff & Kaiser, P.L.L.C. is hereby appointed to be class counsel.

**IT IS FURTHER ORDERED** that class counsel shall provide appropriate notice to the members of the class and shall file with the Court a statement that such notice has been provided.

**IT IS FURTHER ORDERED** that no motion to reconsider this decision may be filed.

Signed: March 16, 2006

Lacy H. Thornburg
United States District Judge